IN the INTEREST OF COREY, J.G., a Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

COREY J.G., Respondent-Appellant-Petitioner.

Supreme Court

*No. 96–3148–FT. Submitted on briefs November 19, 1997.—Decided January 23, 1998.*

(Also reported in 572 N.W.2d 845.)

For the respondent-appellant-petitioner the cause was submitted on the brief (in the Supreme Court) by *Eileen A. Hirsch*, assistant state public defender.

For the petitioner-respondent the cause was submitted on the brief (in the Court of Appeals) by *Thomas L. Storm*, district attorney and pursuant to letter filed by *William L. Gansner,* assistant attorney general, petitioner-respondent will stand on the briefs filed in the Court of Appeals.

¶ 1. N. PATRICK CROOKS, J. The Petitioner, Corey J.G. (Corey), seeks review of an unpublished decision of the court of appeals affirming the circuit court's denial of Corey's motion to dismiss for failure to establish venue pursuant to Wis. Stat. § 48.185 (1993–94).[1]

¶ 2. On March 21, 1996, the State of Wisconsin ("State") filed a petition in Fond du Lac County charging Corey, a juvenile, with delinquency, alleging one count each of criminal damage to property and battery. At the ensuing fact-finding hearing,[2] after the State

---

[1] All future references to Wisconsin Statutes will be to the 1993–94 version of the statutes unless otherwise indicated. Note that although Wis. Stat. ch. 48 (1993–94), The Children's Code, governs the juvenile delinquency proceeding in this case, the statutory provisions governing juvenile delinquency have been amended and renumbered and are currently codified in Wis. Stat. ch. 938 (1995–96), The Juvenile Justice Code.

[2] The purpose of the fact-finding hearing in a delinquency case is the same as the purpose of the trial in civil and criminal adult proceedings. Its purpose is (1) to determine whether the child comes within the court's jurisdiction, (2) to determine whether the facts presented to the court prove the allegations contained in

presented its case, Corey brought a motion seeking dismissal of the proceeding, arguing the State had failed to establish venue. The circuit court judge, Reserve Judge John G. Buchen, denied the motion and concluded venue had been sufficiently established. The jury found that Corey had committed the acts alleged in both counts of the petition, and the circuit court judge entered a dispositional order placing Corey at Lincoln Hills School[3] for one year.

¶ 3. In affirming the circuit court's order, the court of appeals declined to address Corey's venue argument, concluding Corey had not raised the issue of venue with sufficient specificity to preserve it for appeal. The court of appeals determined that the circuit court's denial of the motion suggested that the circuit court interpreted the motion as challenging the proof that the offenses occurred in Clark County rather than venue in the context of a juvenile delinquency proceeding. The court of appeals further determined that Corey's failure to specifically refer to Wis. Stat. § 48.185, the statutory provision governing venue in juvenile delinquency proceedings, deprived the circuit court of an opportunity to review the issue and to receive proof of the issue from the State.

¶ 4. We conclude that Corey's motion was sufficient to preserve for appeal the issue of whether venue was established. We further conclude that the State

---

the petition beyond a reasonable doubt, and (3) to determine whether the allegations that are proved by the evidence presented in court constitute delinquency.

*Wisconsin Handbook for Juvenile Court Services* 49 (Wisconsin Committee to Revise the Juvenile Court Services Handbook) (1977).

[3] Lincoln Hills School is a State juvenile correctional facililty located in Irma, Wisconsin.

failed to establish beyond a reasonable doubt that Fond du Lac County was the proper venue for the juvenile delinquency proceeding pursuant to Wis. Stat. § 48.185. Accordingly, we reverse the decision of the court of appeals.[4]

## I.

¶ 5. The facts are undisputed for purposes of our review. On March 21, 1996, the State filed a Petition for Determination of Status of Corey in Fond du Lac County. In the petition the State alleged Corey was delinquent on two counts. The first count was that of criminal damage to property, contrary to Wis. Stat. § 943.01(1), allegedly occurring on August 22, 1995, at Sunburst Youth Homes, Inc. (Sunburst), in the City of Neillsville, Clark County, Wisconsin. The second count was that of battery, contrary to Wis. Stat. § 940.19(1), allegedly occurring on August 24, 1995, at Sunburst in the City of Neillsville, Clark County, Wisconsin.[5]

---

[4] Our determination to reverse the decision but not remand the case is based upon our recognition that the termination date of the circuit court's dispositional order was June 4, 1997. Further, Wis. Stat. § 48.366, which relates to extended court jurisdiction, apparently would not be applicable to the circumstances presented here; therefore, litigation of the issue of venue would serve no useful purpose.

[5] The incidents at Sunburst occurred in August 1995; however, the petition was not filed until March 21, 1996, because the parties entered into an Informal Disposition Agreement under which Corey was to pay $238.50 in restitution to Sunburst. The Informal Disposition Agreement was voided by Juvenile Court Services of Fond du Lac County in a letter dated February 29, 1996, because Corey was unable to make the restitution payment within the scheduled time period.

¶ 6. At the time of the alleged incidents, Corey was placed at Sunburst pursuant to a prior unrelated dispositional order entered in Fond du Lac County. The March 21, 1996, petition listed Corey's address as the City of Neillsville, Wisconsin. The petition listed Corey's parents' address as the City of Fond du Lac, Wisconsin.

¶ 7. On April 1, 1996, Corey was transferred from Sunburst to St. Ives Residential Treatment Center located in Marathon County, Wisconsin. On April 22, 1996, a state public defender from Fond du Lac County was appointed to represent Corey on the criminal damage to property and battery charges filed against him in Fond du Lac County. The Order Appointing Counsel listed Corey's address as the City of Fond du Lac, Fond du Lac County, Wisconsin.

¶ 8. While at St. Ives Center, Corey exhibited behavioral difficulties on numerous occasions. One such incident occurred on April 25, 1996, at which time Marathon County officials were called. On that same date, an Order for Transportation was entered providing that Corey be transferred from the Marathon County Sheriff's Department to the Fond du Lac County Juvenile Detention Center. The Temporary Physical Custody Request form used to initiate the transport of Corey indicated his address as that of St. Ives Center.

¶ 9. Corey remained at the Fond du Lac County Juvenile Detention Center until May 15, 1996, when, pursuant to a change of placement hearing in an unrelated matter, Corey was ordered to be placed at Lincoln Hills School in Irma, Wisconsin, for one year. Corey's transfer to Lincoln Hills was delayed until May 17, 1996, in light of the fact that he had a fact-finding hearing scheduled on May 16, 1996, for the criminal

damage to property and battery charges arising from the incidents at Sunburst.

¶ 10. At the May 16, 1996, fact-finding hearing, the State called Jeff Crandall, a youth counselor at Sunburst, as a witness to the alleged criminal damage to property. Crandall testified that Corey was a student living at Sunburst and that at the time of the alleged incident, Corey had been at Sunburst for approximately thirteen months. Crandall further testified that on August 22, 1995, Corey was on the roof at the Friedle Unit of Sunburst throwing off shingles and ripping off vents and a wood support system.

¶ 11. With regard to the battery charge, the State called Scott Miller and Tess Ward as witnesses. Miller, a campus support specialist at Sunburst, testified that on August 24, 1995, while at Sunburst, Corey had an altercation with another juvenile resident which subsequently led to Corey's confrontation with a youth counselor, Tess Ward. Miller testified that after the juveniles were separated, Corey barricaded himself in a restroom. Miller further indicated that upon Ward's attempt to enter the restroom and restrain Corey, Corey "head butted" Ward. Ward testified to a similar rendition of the facts, acknowledging that the incident occurred on August 24, 1995, at Sunburst in Neillsville.

¶ 12. At the close of the State's case, Corey brought a motion to dismiss the case for failure to establish venue. The court denied the motion, indicating venue had been established. In its entirety, the dialogue regarding Corey's motion developed as follows:

> [STATE PUBLIC DEFENDER]: I have one more motion. I would move to dismiss for lack of establishment of venue.

[DISTRICT ATTORNEY]: Your Honor, I think the first witness testified that it was at Sunburst Youth Homes, which is in Neillsville, which is in Clark County, State of Wisconsin. I think that is sufficient.

THE COURT: All the witnesses testified to being employed at that place in Neillsville. I'm satisfied that venue has been established. Motion is denied.

(R. 31 at 54.)

¶ 13. The jury determined that Corey had committed both of the acts alleged in the petition. A dispositional hearing was subsequently held on June 5, 1996, at which time the circuit court ordered that custody of Corey be transferred to the Department of Health and Social Services, and that Corey be placed at Lincoln Hills School in Irma, Wisconsin, for one year.

¶ 14. Corey appealed the circuit court's order, arguing the State had not established that Fond du Lac County was the proper venue for the juvenile delinquency proceeding. The court of appeals determined Corey's failure to specify that the venue motion was brought pursuant to Wis. Stat. § 48.185 deprived the circuit court of an opportunity to review the issue and receive proof of venue from the State. The court of appeals affirmed the order of the circuit court, concluding Corey's claim had been waived because it was not properly raised and preserved for appeal.

¶ 15. Two issues arise from the dispute in this case. First, in his motion to the circuit court, did Corey sufficiently raise and preserve for appeal the argument that the State had not established venue? Second, if we determine the issue was properly preserved, did the State fail to establish that Fond du Lac County was the appropriate venue for the juvenile delinquency proceeding?

## II.

■

¶ 16. We first decide whether Corey's motion regarding failure to establish venue was sufficiently raised to preserve the issue for appeal. This is a question of law, and we review such questions de novo. *See First Nat'l Leasing Corp. v. Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977).

■

¶ 17. An objection or motion is sufficient to preserve an issue for appeal if it apprises the court of the specific grounds upon which it is based. *See Holmes v. State*, 76 Wis. 2d 259, 271, 251 N.W.2d 56 (1977). Specificity is required so that the circuit court judge and the opposing party are afforded "an opportunity to remedy any defect." *State v. Barthels*, 166 Wis. 2d 876, 884, 480 N.W.2d 814 (Ct. App. 1992), *aff'd* 174 Wis. 2d 173, 184 n. 8, 495 N.W.2d 341 (1993). When the basis for the objection is obvious, however, "the specific ground of objection is not important." *Champlain v. State*, 53 Wis. 2d 751, 758, 193 N.W.2d 868 (1972). "To be sufficiently specific, an objection must reasonably advise the court of the basis for the objection." *State v. Peters*, 166 Wis. 2d 168, 174, 479 N.W.2d 198 (Ct. App. 1991).

■

¶ 18. In his motion at the fact-finding hearing, Corey moved to dismiss the case, arguing venue had not been established. In the context of a juvenile delinquency proceeding, Wis. Stat. § 48.185 governs venue. Section 48.185 sets forth the appropriate county or counties in which the juvenile delinquency proceeding may be held. It states, in pertinent part:

> **Venue.** (1). . .venue for any proceeding under ss. 48.12. . .may be in any of the following: the county

where the child resides, the county where the child is present or, in the case of a violation of a state law. . .the county where the violation occurred.

¶ 19. Venue in the context of a juvenile delinquency proceeding is distinct from venue in the context of a criminal proceeding to the extent that different geographical locations provide an appropriate venue. In a criminal proceeding, as in a juvenile delinquency proceeding, venue "refers to the place of trial, the particular county or district or similar geographical area within which a case is to be heard." LaFave and Israel, *Criminal Procedure* § 16.1(a) at 334 (1984). *See also State v. Dombrowski*, 44 Wis. 2d 486, 501–02, 171 N.W.2d 349 (1969); *Wisconsin Handbook for Juvenile Court Services* at 11 (" 'Venue' means the particular court(s) where a specific case may properly be heard."). However, under Wis. Stat. § 971.19, the proper venue in a criminal action is generally limited to the county in which the crime was committed.[6]

¶ 20. The district attorney's and circuit court's responses to Corey's motion to dismiss suggest that the establishment of venue was addressed and ruled upon as if it was within the context of a criminal proceeding. The State responded to Corey's motion, stating that "it [the alleged crime] was. . .in Clark County. . ." The circuit court agreed, stating it was "satisfied that

---

[6] Under Wis. Stat. § 971.19, there are exceptions to the requirement that venue is appropriate only in the county where the crime was committed. No exception provides for venue in the county in which the criminal defendant is present. The only exception that provides for venue in the county in which the criminal defendant resides is § 971.19(9), which addresses penalties for failure to comply with sex offender registration pursuant to Wis. Stat. § 175.45.

venue has been established," and denied Corey's motion to dismiss.

¶ 21. We conclude that Corey's motion was sufficient to preserve the issue of venue for appeal. Because the proceeding was one in regard to juvenile delinquency, the motion to dismiss for failure to establish venue was sufficient to advise the court that Corey was raising the issue in accordance with The Children's Code, Wis. Stat. ch. 48, which governs the juvenile delinquency proceeding. We decline to require that a party state the specific statutory section upon which an objection is based where the stated grounds for the objection are sufficient.[7] Corey's motion was sufficiently specific to preserve the issue of venue as, in the context of the juvenile proceeding, it "reasonably advise[d]" the court of the basis for the objection. *Peters*, 166 Wis. 2d at 174. *See also Champlain*, 53 Wis. 2d at 758.

### III.

¶ 22. We next consider whether the evidence produced at the fact-finding hearing was sufficient to support a determination that Fond du Lac County was the appropriate venue for the juvenile delinquency proceeding in accordance with Wis. Stat. § 48.185. We will not reverse a conviction based upon the State's failure to establish venue unless the evidence, viewed most

---

[7] Although we conclude the motion was sufficiently specific to preserve the venue issue for appeal under the circumstances, we recognize that a party should make an attempt to clarify an objection or motion if, as here, there is reason to believe that the opposing party and the circuit court judge may have misinterpreted the objection.

favorably to the state and the conviction, is so insuffi-
cient that there is no basis upon which a trier of fact
could determine venue beyond a reasonable doubt. *See
Smazal v. State*, 31 Wis. 2d 360, 142 N.W.2d 808
(1966).

A.

■

¶ 23. There is no opinion from this court or the
court of appeals setting forth the applicable burden of
proof for establishing venue in a juvenile delinquency
proceeding. However, notwithstanding the fact that
differing geographical locations provide appropriate
venue in juvenile delinquency and criminal proceed-
ings, establishing the appropriate location for a
juvenile delinquency proceeding is analogous to estab-
lishing the appropriate location for a criminal
proceeding. In both instances, the State must establish
venue pursuant to the statutory language governing
venue in the particular proceeding. *See* Wis. Stat.
§§ 48.185; 971.19. Therefore, we can glean support for
our analysis in the present proceeding from the
requirements for establishing venue in a criminal
proceeding.

¶ 24. In a criminal proceeding, this court has
determined that the State must prove venue beyond a
reasonable doubt even though venue is a matter of
procedure and not an element of a crime. *See Dom-
browski*, 44 Wis. 2d at 501–02; *Smazal v. State*, 31 Wis.
2d 360, 362, 142 N.W.2d 808 (1966). When venue is not
contested in a criminal case tried before a jury, a "find-
ing of venue is adequately covered by the standard

verdict forms" which are submitted to the jury[8] and provide for a finding of guilt as charged in the information or complaint. *See* Wis. JI—Criminal 267 n.1. Where venue is contested or an exception to the statutory criminal venue provision applies, the jury is instructed that venue must be proved beyond a reasonable doubt. *See id.*

¶ 25. As stated, venue in a juvenile delinquency proceeding differs from venue in a criminal proceeding only to the extent that the relative governing statutes set forth distinct counties in which venue may be appropriate. The requirement that venue be established is equivalent. The State's burden of proving venue beyond a reasonable doubt is therefore similarly applicable in the context of a juvenile delinquency proceeding. Venue is not an element of the crime and becomes an issue before the trier of fact[9] only in the event that it is contested by the juvenile.

---

[8] Wisconsin statutes and common law do not require that a determination of venue be made by a jury. However, as the Wisconsin Criminal Jury Instructions Committee correctly states in its comment to Wis. JI—Criminal 267, numerous decisions from this court implicitly support the idea that such a determination is an appropriate function of the jury. *See, e.g., State v. Dombrowski*, 44 Wis. 2d 486, 503–04, 171 N.W.2d 349 (1969); *State v. Coates*, 262 Wis. 469, 471, 55 N.W.2d 353 (1952); *Piper v. State*, 202 Wis. 58, 61, 231 N.W. 162 (1930).

[9] In the present case, the circuit court judge, not the jury, made a determination that venue had been established. We find it unnecessary to address whether this is improper where a jury has been impaneled to act as the trier of fact, since we are reversing the court of appeals' decision. In addition, under the current Juvenile Justice Code, Wis. Stat. ch. 938 (1995–96), a juvenile is not entitled to a jury in delinquency proceedings.

We note that the State contends Corey failed to request and thereby waived a jury instruction and a verdict question regard-

## B.

¶ 26. The procedures governing the determination of Corey's delinquency status at the time of the alleged incidents were set forth under Wis. Stat. ch. 48. Section 48.185(1) states that venue is appropriate in the county where the child resides, the county where the child is present, or the county in which a violation of state law occurred. Thus, § 48.185(1) sets forth three exclusive provisions for establishing the appropriate venue in a juvenile delinquency proceeding.

¶ 27. We address the last of the three provisions first, as the parties agree that its application would not support a finding of venue in Fond du Lac County. If there has been "a violation of state law," venue is proper in "the county where the violation occurred." Wis. Stat. § 48.185(1). Corey's alleged delinquent conduct was in violation of a state law, as is evident by the State's petition. Count one alleges that Corey engaged in criminal damage to property, contrary to Wis. Stat. § 943.01(1). Count two alleges that Corey committed battery, contrary to Wis. Stat. § 940.19(1). Accordingly, the county or counties in which these acts occurred would be an appropriate venue for the juvenile delinquency proceeding. *See* Wis. Stat. § 48.185(1).

¶ 28. The State concedes that there was no evidence presented at the fact-finding hearing to support a finding that the alleged acts occurred in Fond du Lac

ing the requirement that venue be proved beyond a reasonable doubt. *Cf.* Wis JI—Criminal 267 (jury instruction to be utilized when venue contested in a criminal proceeding). Because we are reversing the court of appeals' decision affirming the circuit court, we need not address the issue of whether a request for such an instruction has been waived.

County. In fact, there was no evidence offered at the fact-finding hearing that would contradict the witnesses' testimony that the alleged delinquent acts took place at Sunburst, which is in Clark County. Hence, there was insufficient evidence to prove beyond a reasonable doubt that venue would lie in Fond du Lac County as the county where the violations of state law occurred.

¶ 29. Under Wis. Stat. § 48.185(1), venue would also be appropriate in "the county where the child is present." The parties disagree regarding the application of this provision, disputing the time at which the juvenile's presence is determined. Corey contends that the legislature intended the language to apply to the juvenile's presence at the time the petition is filed. The State contends that the legislature intended the language to apply to the juvenile's presence at the time of the fact-finding hearing.

¶ 30. An interpretation of statutory language presents a question of law, which we review de novo. *See Stockbridge School Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996). Our goal in statutory interpretation is to "discern the intent of the legislature." *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148 (1996). "In interpreting a statute, '[t]he threshold question must be whether or not the statute in question is ambiguous.' " *MCI Telecomms. Corp. v. State*, 209 Wis. 2d 310, 316, 562 N.W.2d 594 (1997) (quoting *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995)). Statutory language " 'is ambiguous if reasonable minds could differ as to its meaning.' " *Id.* (citing *Hauboldt v. Union Carbide Corp.*, 160 Wis. 2d 662, 684, 467 N.W.2d 508 (1991)). If the plain language of the statute is ambiguous, we

must " 'look beyond the statute's language and examine the scope, history, context, subject matter, and object of the statute' " to discern legislative intent. *MCI*, 209 Wis. 2d at 316 (quoting *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 282, 548 N.W.2d 57 (1996)). We will resolve any statutory ambiguity to advance the legislature's purpose in enacting the statute. *See UFE*, 201 Wis. 2d at 288 (citing *Carkel, Inc. v. Lincoln Cir. Ct.*, 141 Wis. 2d 257, 265–66, 414 N.W.2d 640 (1987)).

¶ 31. The statutory language regarding a juvenile's presence does not expressly state at what point in time such presence is to be determined. Because the statutory language could reasonably be interpreted as defining presence in the county at different times, potentially resulting in different conclusions, the statute is ambiguous. *See MCI*, 209 Wis. 2d at 316. Accordingly, it is necessary for us to "examine the scope, history, context, subject matter, and object" of the statute. *Id.* (quoting *UFE*, 201 Wis. 2d at 282).

¶ 32. The language in Wis. Stat. § 48.185 providing for venue in the county where the juvenile is present has undergone significant change. The original language governing venue in a juvenile delinquency proceeding was codified in Wis. Stat. § 48.01(5)(a) and (am) (1953). Section 48.01(5)(a) provided that venue was appropriate in the county where the child resides, and § 48.01(5)(am) provided that if "the child or the parent, guardian or custodian is at the time of filing this petition present within some other county, but does not reside therein, the juvenile court of such other county shall have concurrent jurisdiction."

¶ 33. Pursuant to Chapter 575 of the Laws of Wisconsin, 1955, the venue provisions for juvenile delinquency proceedings were recreated and renumbered as Wis. Stat. § 48.16 (1955). *See* § 7, ch. 575,

Laws of 1955. Section 48.16 stated that venue was appropriate in "the county where the child resides, the county where he is present or,. . .the county in which the violation occurred." The drafter's note following § 48.16 as proposed in Senate Bill No. 444 indicated that the change in the venue provision "drops one ground of venue [presence of parent, guardian or custodian]. . .and adds another [county where the violation occurred]. . ." 1955 S.B. 444.

¶ 34. The drafter's note to § 48.16 did not discuss the elimination of the language requiring presence "at the time of filing this petition" but did cite to an opinion of the attorney general which implicitly relies on the requirement of presence at the time of the filing of the petition. *See* 34 Ops. Attn. Gen. 48 (1945). This suggests that the legislature intended no change and that a determination of presence would still be made at the time of the filing of the petition. In 1977, the language of § 48.16 was amended and renumbered as § 48.185. *See* § 28, ch. 354, Laws of 1977. Section 48.185, which governs this case, provides language nearly identical to that which was codified in § 48.16 regarding the presence requirement.

¶ 35. The State's assertion that presence be determined at the time of the fact-finding hearing would lead to unreasonable results, inconsistent with the legislature's purpose of enacting provisions to govern venue. *See UFE*, 201 Wis. 2d at 288. Venue provisions in the adult criminal context were originally enacted to insure the place of trial would be "sufficiently limited" to avoid "the defendant suffering hardship and unfairness." LaFave and Israel, *Criminal Procedure* § 16.1 at 334 (1984). This concept related back to the Declaration of Independence which

"denounced George III 'for transporting us beyond Seas to be tried for pretended offences.' " *Id.*

¶ 36. If we were to accept the State's assertion that presence be determined at the time of the fact-finding hearing, a juvenile would potentially be subject to delinquency proceedings in any county in which the State chose to file its petition. By appearing for the hearing, the juvenile would then be "present" in the county, and venue would be sufficiently established. Such procedures would seem unfair to the juvenile and could potentially create a hardship. We will not reach such unreasonable results in our interpretation of statutory language. *See Kwiatkowski v. Capitol Indemnity Corp.*, 157 Wis. 2d 768, 774–75, 461 N.W.2d 150 (Ct. App. 1990). Thus, we are convinced that the legislature intended presence to be determined at the time of the filing of the petition.

¶ 37. The State failed to provide any evidence at the fact-finding hearing that would support a finding of Corey's presence in Fond du Lac County on March 21, 1996, when the petition was filed. The only testimony regarding Corey's presence in any county on a specified date was from the State's witnesses who asserted that Corey was present at Sunburst, which is in Clark County, on August 22 and 24, 1995. The evidence produced at the hearing was certainly not sufficient to prove beyond a reasonable doubt that Corey was present in Fond du Lac County at the time of the filing of the petition.

¶ 38. Finally, venue is appropriate in the county where the child resides. Neither party discusses the appropriate interpretation of "resides." However, we find such interpretation relevant to our analysis and application of Wis. Stat. § 48.185(1). As stated, the threshold question in statutory interpretation is

whether the relevant statute is ambiguous. *See MCI*, 209 Wis. 2d at 316. A statutory provision is deemed ambiguous if reasonable minds could reach different conclusions regarding its meaning. *See id.* If the language of the statute is ambiguous, we will " 'examine the scope, history, context, subject matter, and object of the statute' " to discern legislative intent. *Id.* (quoting *UFE*, 201 Wis. 2d at 282).

¶ 39. We conclude that the legislature's usage of the word "resides" is ambiguous, as the term may reasonably be interpreted as meaning "residence" or "domicile." "Residence" is defined as the "[p]lace where one actually lives or has his [or her] home; a person's dwelling place or place of habitation; an abode;. . ." *Black's Law Dictionary* 1308 (6th ed. 1990). "Domicile," on the other hand, "means living in that locality with intent to make it a fixed and permanent home." *Id.* An individual may have more than one residence, but may only have one legal domicile at any given moment. Although an individual's residence is distinct from his or her domicile, the two may be, and often are, the same place. Hence, the terms "residence" and "domicile" are "frequently used as if they had the same meaning." *Id.* Because the plain language of the statute is ambiguous, we will " 'examine the scope, history, context, subject matter, and object of the statute' " to discern the legislature's intent. *MCI*, 209 Wis. 2d at 316 (quoting *UFE*, 201 Wis. 2d at 282).

¶ 40. Unlike the language of Wis. Stat. § 48.185(1) providing for venue in the county where the child is present, the language of § 48.185(1) providing for venue in the county where the child resides has gone essentially unchanged. As previously discussed, § 48.185 has evolved from its original formulation which was codified in Wis. Stat. § 48.01(5)(a) and (am)

(1953). Section 48.01(5)(a) provided that a court had juvenile jurisdiction over delinquent "children residing within the county."

¶ 41. In 1955, Wis. Stat. ch. 48 (1953) was repealed and recreated as The Children's Code. *See* § 7, ch. 575, Laws 1955. As such, Wis. Stat. § 48.16 (1955) was created to provide for appropriate venue in "the county where the child resides, the county where he is present or, in the case of a violation of a state law or a county, town or municipal ordinance, the county where the violation occurred." Section 48.16 was renumbered as § 48.185(1) and amended slightly in 1977. *See* § 28, ch. 354, Laws 1977. Section 48.185 governs this case and provides essentially the same language as its predecessor. Thus, the word "resides" has been used since the original enactment of the venue provision in juvenile delinquency proceedings.

¶ 42. No legislative history could be found addressing whether the legislature intended "resides" to mean "residence" or "domicile." However, the purpose and context of The Children's Code leads us to conclude that the legislature intended it to mean "domicile."

¶ 43. The legislature codified language setting forth its purpose for enacting The Children's Code in Wis. Stat. § 48.01 (1993–94). Section 48.01 states that the purposes of The Children's Code include assuring a fair hearing for a child and protecting public safety (*see* § 48.01(1)(a)), providing for the child's physical and mental development and preserving the family unit (*see* § 48.01(1)(b)), responding to a child's needs via community-based programs and keeping a child in his or her home (*see* § 48.01(1)(e)), and providing a child with a permanent and stable family relationship (*see* § 48.01(1)(g)).

¶ 44. Attempting to insure that these legislative purposes are promoted includes adopting procedures that provide "[a]n integrated and co-ordinated program for all delinquent. . .children both in their own community and while in the custody of the state." *Wisconsin Handbook for Juvenile Court Services* at 3. Accordingly, venue is most appropriate in the county of the child's domicile since:

> [c]ourt and social services personnel may be familiar with the child and the family. The local court is sensitive to community values and is prepared to fashion dispositions to community needs and resources. Finally, the local juvenile court is equipped to determine whether or not dispositional alternatives or supervision programs are helping the child overcome his/her problem.

*Id.* at 11.[10] *See also*, Huenink, *Model Judicial Policies for Juvenile Court Intake* 2–2 (1985); Plum and Crisafi,

[10] We recognize that the legislative purpose in enacting the current Juvenile Justice Code, Wis. Stat. ch. 938 (1995–96), was an attempt to balance the rights of the child with the rights of victims and the protection of the community by imposing greater accountability on delinquent children and affording greater protections to the community. *See* Wis. Stat. § 938.01. However, the purposes of The Juvenile Justice Code still involve assuring a child a fair hearing (*see* § 938.01(d)), developing a child's ability to live as a productive and responsible member of the community (*see* § 938.01(c)), and responding to a child's needs for care and treatment in accordance with his or her best interests as well as the protection of the public (*see* § 938.01(f)). Hence, providing that the juvenile delinquency proceeding may be in the county where the child is domiciled is still appropriate despite changes in the legislature's purpose in enacting The Juvenile Justice Code.

*Wisconsin Juvenile Court Practice and Procedure* § 1.09 (1993). A minor child's domicile is generally that of his or her parent or parents. *See Carlton v. State Dept. of Public Welfare,* 271 Wis. 465, 469, 74 N.W.2d 340 (1956) (Citing Restatement, Conflict of Laws, ch. 2, sec. 30.). *See also,* 28 C.J.S. *Domicile* § 20 (1996).

¶ 45. This court has never addressed the issue of interpreting "resides" under the venue provision of The Children's Code. However, a similar analysis was undertaken in relation to language set forth under Wis. Stat. ch. 49 (1953), which was in effect the same year the original venue provision governing juvenile delinquency proceedings was enacted. In *Carlton v. State Dept. of Public Welfare,* 271 Wis. 465, 74 N.W.2d 340 (1956), this court interpreted language in Wis. Stat. ch. 49 which provided that any individual who "resides" in a municipality for one year is entitled to public assistance. The *Carlton* court held that "the term residence as used in the statutes now in question is the equivalent of domicil as generally used by the courts and in the textbooks."[11] *Id.* at 468 (citing *Dutcher v. Cutcher,* 39 Wis. 651, 658 (1876) ("residence" the equivalent of "domicile" in divorce statutes); *State ex rel. Wood County v. Dodge County,* 56 Wis. 79, 86–76, 13 N.W. 680 (1882) ("proper residence" equivalent of "acquired domicil" in statutes governing liability for care of insane individuals); *In Guardianship of Figi,* 181 Wis. 136, 138, 194 N.W. 41 (1923) ("residence" used

---

[11] Without specifically addressing the issue, the Wisconsin court of appeals has arguably reached a similar conclusion under Wis. Stat. § 48.185 and applied the venue provision of The Children's Code in the context of domicile. *See M.L.S. v. State,* 157 Wis. 2d 26, 31, 458 N.W.2d 541 (Ct. App. 1990) (". . . venue is appropriate in the juvenile's home county.").

as "domicile" in statute covering the appointment of a guardian). The *Carlton* court also recognized that a change of residence does not occur when one lives in a place for "mere special or temporary purposes." *Carlton*, 271 Wis. at 468.

¶ 46. We therefore conclude that the legislature intended "resides" as used in Wis. Stat. § 48.185 (1993–94) to be defined as "domicile." We further conclude that domicile is to be determined at the time of the filing of the petition. No legislative history could be found discussing the time at which a determination of domicile should be made. However, our conclusion is consistent with our interpretation of presence under Wis. Stat. § 48.185(1), as well as the language of Wis. Stat. § 48.185(2) and (3), which provide that residence be determined "at the time that the petition is filed." Our conclusion is also consistent with the only exception in the criminal venue statutory provisions allowing for venue in the county of residence of the defendant. Thus, Wis. Stat. § 971.19(9) provides that, under certain circumstances, venue may be appropriate "in the defendant's county of residence at the time that the complaint is filed. . ."

¶ 47. There was no evidence presented at the fact-finding hearing that would support the assertion that Corey was domiciled in Fond du Lac County at the time the petition was filed. In testifying for the State, Crandall indicated that Corey was staying at Sunburst Homes for approximately thirteen months. This is not dispositive, however, because Sunburst was Corey's temporary residence and is not, in any event, in Fond du Lac County. No evidence was offered to show that Corey or his parents were domiciled in Fond du Lac County. We therefore conclude that the State did not

prove beyond a reasonable doubt that Corey was "residing" (i.e. domiciled) in Fond du Lac County at the time the petition was filed for purposes of establishing venue under Wis. Stat. § 48.185.

¶ 48. Because the State failed to present any evidence to support a finding that venue was appropriate in Fond du Lac County under Wis. Stat. § 48.185, we must reverse the finding of delinquency and vacate the dispositional order.

## IV.

¶ 49. In sum, we conclude that Corey's motion to dismiss was sufficiently specific to preserve the issue of whether venue had been established for appeal. We further conclude that there was insufficient evidence to support a finding beyond a reasonable doubt that venue was proper in Fond du Lac County.

*By the Court.*—The decision of the court of appeals is reversed.