STATE of Wisconsin, Plaintiff-Respondent,†

v.

Timothy Scott Bailey SMITH, Sr., Defendant-Appellant.

Court of Appeals

*No. 03–1698–CR. Submitted on briefs January 13, 2004.— Decided May 27, 2004.*

2004 WI App 116

(Also reported in 685 N.W.2d 821.)

† Petition to review granted 8-2-04.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick M. Donnelly*, assistant state public defender, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. DYKMAN, J. Timothy Smith, Sr., appeals from a judgment convicting him of two felony counts of failure to pay child support. He contends the trial court erred in refusing to instruct the jury that the child support order upon which the charges were based must have been issued by a court of competent jurisdiction and that the court erroneously exercised its discretion by admitting an unauthenticated copy of the child support order into evidence. Smith further argues that the evidence presented was insufficient to support his conviction. For the reasons discussed below, we agree and reverse the judgment of conviction.

## BACKGROUND

¶ 2. Timothy and Denise Smith were married in Connecticut in 1977 and were divorced in 1989 by a district court in Waldo County, Maine. Although the couple had three children, no child support order was entered at the time of the divorce. Denise and the children subsequently moved to Wisconsin. A child support case manager in Green County, Wisconsin, eventually submitted a petition for child support on Denise's behalf to the Maine Department of Human Services, pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA). Upon meeting with an employee of the Division of Support Enforcement in the Maine Department of Human Services, Timothy signed an order indicating he agreed to make child support payments. A judge from the Sagadahoc County Superior Court also signed the order, which directed Timothy to pay $68.00 per week in child support.

¶ 3. In 1999, the State of Wisconsin charged Timothy with two counts of failure to pay child support for periods of 120 or more consecutive days. Prior to trial, Timothy challenged the validity of the child

support order that he was accused of violating, claiming that the Sagadahoc County Superior Court was not a court of competent jurisdiction within the meaning of Wis. Stat. § 948.22(1)(a) (2001–02).[1] He argued that the question of the court's competent jurisdiction must be submitted to the jury, and he requested a jury instruction to that effect. The trial court ruled as a matter of law that the court that had issued the child support order was one of competent jurisdiction, and refused to instruct the jury on the issue or to allow Timothy to present direct evidence on the question. The court did, however, allow Timothy to present evidence as to why he believed he was not legally obligated to comply with the child support order.

¶ 4. At trial, the state produced a copy of an order that had purportedly been signed by Justice Brennan of the Sagadahoc County Superior Court. The copy bore the Green County Circuit Court seal and was certified by a deputy clerk of the Green County Circuit Court to be a full and correct copy of a document on file in the Green County Circuit Court. An employee of the Office of the Clerk of the Circuit Court for Green County explained that the copy being offered into evidence had been made from another copy of the Maine order that had in turn been certified as a true copy by an assistant clerk of the Superior Court for Sagadahoc County, Maine. The trial court admitted the copy into evidence over the objection of the defense. Timothy was convicted of both counts.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

## DISCUSSION

*Jury Instruction on Essential Elements of Failure to Provide Child Support*

██

¶ 5. The Fifth Amendment to the United States Constitution requires that all criminal convictions "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 509–10 (1995). Smith argues that his Fifth Amendment right to have the jury determine his guilt on all elements of the charged crime was violated by the trial court's refusal to instruct the jury that the child support order at issue in this case must have been issued by a court of competent jurisdiction. In order to evaluate Smith's claim, we must first identify the elements of the charged crime, felony failure to provide child support. Determining the statutory elements of a crime presents a question of law which we review de novo. *State v. Ruesch*, 214 Wis. 2d 548, 552, 571 N.W.2d 898 (Ct. App. 1997).

¶ 6. Wisconsin Stat. § 948.22(2) provides that "[a]ny person who intentionally fails for 120 or more consecutive days to provide . . . child support which the person knows or reasonably should know the person is legally obligated to provide is guilty of a . . . felony."[2] The statute defines "child support" to include "an amount which a person is ordered to provide for sup-

---

[2] At the times Smith was alleged to have failed to provide support, the offense was categorized as a Class E felony. The offense has since been reclassified as a Class I felony. The reclassification does not in any way change our analysis of the elements of the crime.

port of a child by a court of competent jurisdiction in this state or in another state . . . ." Section 948.22(1)(a).

¶ 7. The parties agree that the felony crime of failure to provide child support includes the following elements: (1) that the defendant intentionally failed to provide child support; (2) that the failure to provide support continued for 120 or more consecutive days; and (3) that the defendant knew or reasonably should have known that he was legally obligated to provide the child support. *See* Wis. JI—Criminal 2152 (2001). They disagree over whether the State must also prove a fourth element, namely, that the child support order was issued by a court of competent jurisdiction.

¶ 8. The State maintains that the question of whether a particular court that issued a child support order was one of competent jurisdiction is "purely a predicate question of law for the trial court, without any factual component for jury determination." The United States Supreme Court rejected a similar argument in *Gaudin*, however. In *Gaudin*, the government asked the court to decide that the question of materiality was not an essential element of the crime of making a materially false statement that needed to be submitted to the jury, but rather a legal question to be decided by the court. *Gaudin*, 515 U.S. at 511. In dismissing the government's arguments, the court acknowledged that a judge "must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." *Id.* at 513. It noted, however, that how the question of relevancy or materiality might be treated for purposes of determining the admissibility of evidence was not dispositive of how the question should be treated when explicitly made an element of a criminal offense. *Id.* at 520–21. It explained that the ultimate materiality determination required applying a legal

standard to historical facts, and that criminal defendants had a right to demand that the jury decide every issue, including those involving the application of law to facts. *Id.* at 512–14. The court concluded that the trial court's refusal to submit the question of materiality to the jury violated the defendant's Fifth Amendment rights. *Id.* at 522–23.

¶ 9. Under the reasoning of *Gaudin*, we are persuaded that where, as here, a charge of failure to provide child support is based upon noncompliance with a child support order, the question of whether the child support order has been issued by a court of competent jurisdiction needs to be submitted to the jury, even though that determination involves the application of a legal standard to the facts of the case. Thus, in order to obtain a conviction for felony failure to provide child support based upon noncompliance with a support order, the State must prove the following four elements: (1) a court of competent jurisdiction issued an order requiring the defendant to provide child support; (2) the defendant knew or reasonably should have known that he was legally obligated to provide the child support; (3) the defendant intentionally failed to provide the support specified in the order; and (4) the failure to provide support continued for 120 or more consecutive days. We conclude the trial court's refusal in this case to instruct the jury that the child support order needed to have been issued by a court of competent jurisdiction deprived the defendant of his Fifth Amendment right to have all elements of the crime decided by a jury.

¶ 10. The State points out that omissions in jury instructions are subject to a harmless-error analysis.

*See State v. Harvey*, 2002 WI 93, ¶ 6, 254 Wis. 2d 442, 647 N.W.2d 189. An error is only harmless, however, if it is clear beyond a reasonable doubt that a rational jury would still have convicted absent the error. *See State v. Carlson*, 2003 WI 40, ¶ 46, 261 Wis. 2d 97, 661 N.W.2d 51. We cannot draw such a conclusion where, as here, not only was the jury not instructed on an essential element of the charged crime, but the defense was also precluded from presenting evidence on that element.

¶ 11. The State next contends that the remedy for an inadequate jury instruction should be a remand for a new trial. Smith, on the other hand, argues that he is entitled to an acquittal because the State also failed to present sufficient evidence to prove that the child support order had been issued by a court of competent jurisdiction. Before we evaluate the sufficiency of the evidence presented in this case, we will first determine what is meant by the statutory phrase "court of competent jurisdiction" and resolve the parties' dispute over whether the child support order from Maine was properly entered into evidence.

### *Meaning of "Court of Competent Jurisdiction"*

¶ 12. We review questions of statutory interpretation de novo, according to a well-established methodology.

> The purpose of statutory interpretation is to discern the intent of the legislature. To determine this intent, we look first to the plain language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is our duty to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning.

> If the language of the statute is ambiguous and does not clearly set forth the legislative intent, the

213

court will resort to judicial construction. We ascertain legislative intent through judicial construction in relation to a number of extrinsic factors, including the legislative object intended to be accomplished, and the statute's scope, history, context, and subject matter. A statute is ambiguous if it is capable of being understood by a reasonably well-informed person in either of two senses. Depending on the facts of a case, the same statute may be ambiguous in one setting and unambiguous in another.

In addition, although "it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute." Moreover, in interpreting a statute, courts must attempt to give effect to every word of a statute, so as not to render any portion of the statute superfluous.

*Landis v. Physicians Ins. Co. of Wisconsin, Inc.*, 2001 WI 86, ¶¶ 14–16, 245 Wis. 2d 1, 628 N.W.2d 893 (citations omitted).

■

¶ 13. Smith contends that a "court of competent jurisdiction" is one that has competency to proceed, in the sense that it has the "power to exercise" its subject matter jurisdiction. *See Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 200, 496 N.W.2d 57 (1993). The State asserts that the term "court of competent jurisdiction" is ambiguous, because it can sometimes refer to a court having subject matter jurisdiction alone, and sometimes refer to a court having both subject matter and personal jurisdiction. The State's assertion that the phrase can be reasonably interpreted in more than one way finds support in a summary of black letter law on the topic of jurisdiction, which states:

The term "competent jurisdiction" is susceptible of two meanings; it may signify that the court must acquire and exercise jurisdiction competent to grant an application, through and by reason of a strict conformity to the requirements of a statute, or it may signify jurisdiction over the subject matter, a sort of authority in the abstract, to hear and determine a case. In its usual meaning, however, the term embraces the person as well as the case.

A court of competent jurisdiction is one recognized by law as possessing the right to adjudicate the controversy, or one having power and authority of law at the time of acting to do the particular act, or one that has jurisdiction both of the person and of the subject matter.

21 C.J.S. *Courts* § 9 (1990). We agree that the phrase "court of competent jurisdiction," as used in WIS. STAT. § 948.22, could reasonably be understood either to include or not include the requirement of personal jurisdiction. We therefore conclude the statute is ambiguous in that regard. Accordingly, we will look to extrinsic factors for assistance in interpreting it.

¶ 14. None of the drafting history offered by the parties explicitly addresses what the legislature meant by a court of competent jurisdiction. The object, scope, and context of WIS. STAT. § 948.22 are rather straightforward, however. The object of the statute is to criminalize a person's intentional failure to provide support in accordance with a known or constructively known legal obligation. The scope of the statute encompasses failure to fulfill support obligations imposed by court orders issued in Wisconsin or in other states, territories or possessions of the United States, as well as those imposed by statute. The statute must be placed in the context of a number of other state and federal statutes

dealing with the effect and enforcement of child support orders in states other than those that issued them.

¶ 15. For instance, 28 U.S.C. § 1738A (1989) deals with the question of full faith and credit for child support orders. It provides that the appropriate authorities of each state shall enforce the terms of a child support order from another state when the court that issued the order had both subject matter jurisdiction to hear the matter and had personal jurisdiction over the contestants, and the contestants were given reasonable notice and opportunity to be heard. 28 U.S.C. § 1738A(a), (c). In addition, WIS. STAT. § 767.21(1)(a) provides:

> Full faith and credit shall be given in all courts of this state to a judgment in any action affecting the family, except an action relating to child custody, by a court of competent jurisdiction in another state, territory or possession of the United States, when both spouses personally appear or when the respondent has been personally served.

¶ 16. While the question of whether an order issued in another state can be enforced in this state is technically distinct from the question of whether such an order can serve as the basis for a felony failure to support charge, we see no logical reason why the standard for evaluating the authority of the courts that issued such orders should differ. Both the full faith and credit provisions and the felony failure to support statute serve to encourage compliance with valid out-of-state child support orders. If a defect in subject matter jurisdiction, personal jurisdiction, or notice would render an out-of-state support order invalid and unenforceable under the full faith and credit provisions, it would make no sense to allow noncompliance with such a defective order to serve as the basis for a

criminal action. We conclude that the term "court of competent jurisdiction," as used in WIS. STAT. § 948.22, means a court that had both the power to exercise subject matter jurisdiction and the personal jurisdiction to issue a support order. The personal jurisdiction requirement in turn encompasses the requirement of adequate notice.

¶ 17. We are aware that subject matter jurisdiction and personal jurisdiction may be difficult concepts for a jury to grasp. Our decision means the State might be required to provide expert testimony on the question of competent jurisdiction, particularly where an out-of-state order is involved. *See Witt v. Realist, Inc.*, 18 Wis. 2d 282, 289–90, 118 N.W.2d 85 (1962) (foreign law is to be proven as other facts and expert testimony on the subject is permissible). In the typical case, however, we are confident that a trial court could give adequate instructions to guide the jury as to whether an order was issued by a court of competent jurisdiction. That is, the court could properly instruct the jury as to the relevant law. The jury could then apply the trial court's explanation of the law in determining whether a court of competent jurisdiction did, in fact, issue an order requiring the defendant to provide support.

*Admissibility of the Support Order*

¶ 18. We next consider Smith's claim that the copy of the Maine child support order introduced by the State should have been excluded from evidence for lack of authentication. The admissibility of evidence generally lies within the trial court's discretion. *Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. A court properly exercises discretion when it considers the facts of record under the proper legal

standard and reasons its way to a rational conclusion. *Burkes v. Hales*, 165 Wis. 2d 585, 590–91, 478 N.W.2d 37, 39 (Ct. App. 1991).

¶ 19. As we understand the parties' arguments, Smith contends that 28 U.S.C. § 1738—a full faith and credit provision enacted under the authority of Article IV, section 1 of the United States Constitution—preempts any state statutes relating to the authentication or admissibility of out-of-state orders, such that a certificate from a judge is always required to authenticate an out-of-state court order. The State disputes that 28 U.S.C. § 1738 is the exclusive method for authenticating out-of-state orders, and contends that the Maine order at issue here was admissible under either Wis. Stat. § 889.15 or § 909.02. We will set forth the relevant portions of these provisions before discussing their application here.

¶ 20. First, 28 U.S.C. § 1738 provides:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the Untied States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

¶ 21. Wisconsin Stat. § 889.15 provides:

> The records and judicial proceedings of any court of the United States, or of any state or territory or district

thereof and of any foreign country, and copies thereof, shall be admissible in evidence in all cases in this state when authenticated or certified in the manner directed by ss. 889.07 and 889.08 or by acts of congress, or the laws of such state, territory or district, or of such foreign country.

¶ 22. WISCONSIN STAT. § 889.07, in turn, provides that a certified copy of a document "shall be received with like effect as the original," while WIS. STAT. § 889.08 specifies in relevant part:

> (1) Whenever a certified copy is allowed by law to be evidence, the copy shall be certified by the legal custodian of the original to have been compared by the custodian with the original, and to be a true copy thereof or a correct transcript therefrom, or to be a photograph of the original. The certificate must be under the custodian's official seal or under the seal of the court, public body or board, whose custodian the custodian is, when the custodian, court, body or board is required to have or keep such seal.
>
> . . . .
>
> (3) Any certificate purporting to be signed, or signed and sealed, as authorized by law, shall be presumptive evidence that it was signed by the proper officer, and if sealed, that it has the proper seal affixed, except when the law requires an additional certificate of genuineness.

¶ 23. Finally, WIS. STAT. § 909.02 provides that extrinsic evidence of authenticity is not a condition precedent to admissibility for:

> (1) PUBLIC DOCUMENTS UNDER SEAL. A document bearing a seal purporting to be that of the United States, or of any state . . . thereof . . . and a signature purporting to be an attestation or execution.

. . . .

(4) CERTIFIED COPIES OF PUBLIC RECORDS. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with sub. (1), (2) or (3) or complying with any statute or rule adopted by the supreme court.

¶ 24. The State does not dispute Smith's contention that it failed to provide the judge's certification specified in 28 U.S.C. § 1738. It argues, however, that while compliance with the requirements of 28 U.S.C. § 1738 compels admission of an out-of-state order, failure to comply with the requirements does not necessarily require exclusion. Rather, the State maintains, 28 U.S.C. § 1738 still permits states to provide less stringent standards for authentication of out-of-state orders under their own evidentiary rules. It points to a number of decisions by other states and federal courts supporting its contention. *See Starzl v. Starzl*, 686 S.W.2d 203, 205 (Tex. Ct. App. 1984); *Murphy v. Murphy*, 581 P.2d 489, 492 (Okla. Ct. App. 1978); *Donald v. Jones*, 445 F.2d 601, 606 (5th Cir. 1971); *Price v. Price*, 447 N.E.2d 769, 772 (Ohio Ct. App. 1982); and *State v. Wolfskill*, 421 S.W.2d 193, 195 (Mo. 1967). We agree with the State's reasoning and consider the cases cited persuasive. 28 U.S.C. § 1738 sets forth conditions under which one state *must* admit into evidence an order or judgment from another state. It does not, however, make those provisions the exclusive basis for the admissibility of an out-of-state order in this state. We

therefore look to the Wisconsin statutes to see if they provide an alternate basis for admissibility of the Maine child support order.

¶ 25. We agree with Smith that the State's reliance upon WIS. STAT. § 909.02 is misplaced. First of all, it is clear in the context of the statute that subsection (1) refers to the admission of original documents. The order at issue here was a certified copy of another copy of a Maine child support order. Furthermore, while subsection (4) does deal generally with the admissibility of certified copies, we are persuaded that the issue here is controlled by WIS. STAT. § 889.15 because that statute deals more specifically with the admissibility of copies of records from out-of-state judicial proceedings. *See Nicolet Minerals Co. v. Town of Nashville*, 2002 WI App 50, ¶ 17, 250 Wis. 2d 831, 641 N.W.2d 497, *review denied,* 2002 WI 48, 252 Wis. 2d 151, 644 N.W.2d 687 (Wis. Apr. 22, 2002) (No. 01–1339) (explaining that when there are multiple statutes dealing with the same issue, the more specific one controls).

¶ 26. WISCONSIN STAT. § 889.15 provides three ways in which an out-of-state order may be authenticated: (1) by compliance with the certification provisions of WIS. STAT. §§ 889.07 and 889.08; (2) by compliance with the provisions set forth by Congress; or (3) by compliance with the provisions of the state where the order was issued. We conclude that the copy of the Maine child support order submitted by the State failed to satisfy any of these three methods of authentication.

¶ 27. First, the submitted copy failed to satisfy WIS. STAT. § 889.08 because it was not itself certified "by the legal custodian of the *original*" document filed in Maine. (Emphasis added.) Rather, the submitted copy was certified by the Deputy Clerk of Green County to be a full and correct copy of what was actually another

copy of the Maine child support order which had been filed in the Green County Circuit Court. The Green County Deputy Clerk was not the custodian of the original child support order filed in Maine and was in no position either to certify or testify that the submitted copy was a true and correct copy of that order.

¶ 28. Second, as the State has conceded, the submitted copy failed to satisfy the authentication provisions provided by Congress in 28 U.S.C. § 1728 because it was not accompanied by a judicial certificate from Maine.

¶ 29. Finally, the State asserts that the relevant parts of the self-authentication rules in Maine are identical to Wis. Stat. § 909.02(1) and (4). *See* Me. R. Evid. 902.(1) and (4). We have already explained that the submitted copy did not satisfy § 909.02(1) because it was not an original. We further conclude that the submitted copy would not satisfy § 909.02(4), because it could not properly be "certified as correct" by the Green County Deputy Clerk, who was not a "custodian or other person authorized to make the certification" of the original order. Therefore, the State has failed to show that the submitted copy would have been admissible under the rules of evidence in Maine.

¶ 30. In light of our determination that the submitted order failed to satisfy the requirements of Wis. Stat. § 889.08(1), we need not address whether any "additional certificate of genuineness" was also required under § 889.08(3). We conclude the trial court erroneously exercised its discretion by admitting the child support order because it was operating under a mistaken view of the law.

¶ 31. The State again argues that any error was harmless. We again disagree. The child support order

was a key piece of evidence relating to two different elements of the charged crime. Had the trial court properly excluded the copy of the Maine child support order, a reasonable jury might have found reason to doubt either that a child support order had been issued by a court of competent jurisdiction, or that Smith should have known that he was legally obligated to pay the specified child support.

*Sufficiency of the Evidence*

¶ 32. The last question before us is whether to remand this matter for a new trial, or to direct that a judgment of acquittal be entered. Double jeopardy precludes retrial if there was insufficient evidence to support the verdict. *State v. Wulff*, 207 Wis. 2d 143, 153–54, 557 N.W.2d 813 (1997). The test for reviewing the sufficiency of the evidence to support a verdict is whether the evidence, viewed most favorably to the state, and the conviction are so lacking in probative value and force that no reasonable jury could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). Our consideration includes even evidence which was erroneously admitted. *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988). Given our conclusion that the State needed to prove that the child support order had been issued by a court of competent jurisdiction having both subject matter and personal jurisdiction we are persuaded that the evidence presented at trial was insufficient to support the verdict.

¶ 33. The State points out that Smith, himself, testified that he signed the document which was eventually entered as the support order in Maine, and that he knew the order had not been overturned. However,

facts tending to show that Smith had reason to believe that the order was valid go to the second element of the offense, not the first. Smith could not be convicted of failing to comply with an invalid child support order, even if he erroneously believed that it was valid. A University of Wisconsin law professor testified that it would be necessary to look at the laws of Maine in order to determine whether the court that issued Smith's child support order was one of competent jurisdiction. We agree with that assessment. The State did not present the jury with any evidence as to the laws of Maine. Nor did the State give the jury sufficient facts from which it could have resolved the questions of subject matter and personal jurisdiction. Accordingly, we reverse the judgment of conviction.

*By the Court.*—Judgment reversed.